LAW OFFICES OF

LEVINE, HIRSCH, SEGALL, MACKENZIE & FRIEDSAM
A PROFESSIONAL ASSOCIATION OF TRIAL ATTORNEYS

ARNOLD D. LEVINE
RICHARD A. HIRSCH
STEPHEN L. SEGALL
ROBERT MACKENZIE
LESLEY J. FRIEDSAM

WACHOVIA CENTER
100 SOUTH ASHLEY DRIVE, SUITE 1770
TAMPA, FLORIDA 33602
POST OFFICE BOX 3429
TAMPA, FLORIDA 33601-3429

TELEPHONE
(813) 229-6585

TELECOPIER
(813) 229-7210

EMAIL
ALEVINE@LHSBLAW.COM

June 17, 2010

Sharon Clayton
22626 Pacific Coast Highway
Unit: NO22
Malibu, CA 90265

Sharon Clayton
c/o Ron and Margaret Jones
10945 Fort King Highway
Dade City, FL 33525-8517

RE: Anthony Moore v. Sharon Clayton

Dear Ms. Clayton:

As required by Section 772.11, Florida Statutes, please accept this letter as notification that I intend to pursue a claim for civil theft pursuant to Section 812.014, Florida Statutes, for the unauthorized taking of certain furniture, personal property, and furnishings from the home of my client, Anthony Moore, on or about April 10, 2010, said items being worth approximately $800,000. This is a formal demand for three times the damages set forth above, plus attorney fees and any other damages, including punitive damages, the court deems just and appropriate.

Please govern yourself accordingly.

Very truly yours,

Arnold D. Levine

ADL/ep

EXHIBIT
"A"

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

ANTHONY MOORE,

Plaintiff,

vs.

SHARON CLAYTON,

Defendant.
_______________________________/

CASE NO.: 10 13485

DIVISION B

**COMPLAINT**

Plaintiff, Anthony Moore, sues Defendant, Sharon Clayton, and alleges:

**GENERAL ALLEGATIONS**

1. The matters that are the subject matter of these proceedings all occurred in Hillsborough County, Florida.

2. Plaintiff, Anthony Moore, is a resident of England.

3. Defendant, Sharon Clayton, is a resident of California, but she regularly does business in Florida.

4. The amount of Plaintiff's claim is in excess of $15,000.00 exclusive of interest and costs.

**COUNT I**
**(Conversion)**

5. Plaintiff realleges and reavers each and every allegation in paragraphs 1 through 4 above.

6. For approximately the past five (5) years the Defendant used the Plaintiff's Tampa residence located at 18623 Avenue Capri, Lutz, Florida, which residence is in a

EXHIBIT
A

gated community, as a stopping off point when she travelled to the United States from abroad.

7.  That over the past five (5) years the Defendant would stop off at the Plaintiff's residence on an average of once every three (3) months and would stay for two to three days. As such, she had some clothing and other personal effects which she kept at the Plaintiff's Tampa residence but she was never given her own key to the Plaintiff's Tampa residence.

8.  The Plaintiff's residence could be accessed through a keyless entry through the garage area only by someone who knew the combination to gain such access. The combination to the keypad to obtain such access to the Plaintiff's home was changed from time to time and given the infrequency that the Defendant visited the Plaintiff's home she did not have independent knowledge of the combination to gain keyless access to the Plaintiff's home.

9.  Accordingly, upon arriving in Tampa, Florida, the Defendant would call Ms. Amy Smith, who works for Plaintiff and who resides in Tampa, Florida, to ask for the combination so she could gain access the Plaintiff's home.

10. The keyless combination to the Plaintiff's home would only be provided to Defendant by Ms. Smith if the Plaintiff authorized that the combination be provided to Defendant. Since the Defendant did not have a key to the home, she only accessed the home after obtaining the keyless combination from Ms. Smith.

11. On April 10, 2010, rather than contact Ms. Smith to obtain the keyless combination to Plaintiff's home, as was the past pattern and practice of Plaintiff and Defendant, the Defendant proceeded to the security gate for this gated community to gain access to the Plaintiff's Tampa residence and was admitted to the gated community.

12. The Defendant accompanied by a moving van then proceeded to the Plaintiff's Tampa residence and gained access to the Plaintiff's home by forcing open a door to the residence.

13. Without the knowledge or consent of the Plaintiff, Defendant removed, via the moving van, substantially all of the antiques and furniture (hereinafter referred to as the "Property") owned by the Plaintiff located at the Plaintiff's home without any authority so to do. Said Property has a value exceeding $800,000.

14. That Defendant willfully, knowingly and fraudulently gained entry and access to Plaintiff's Tampa residence with the intent to appropriate said Property located therein for her own personal use and gain.

15. As of April 10, 2010, Defendant had no right, title, or interest in any of the Property located in Plaintiff's Tampa residence.

16. Notwithstanding the fact that Defendant had no right, title or interest in any of the Property located in Plaintiff's Tampa residence, on or about April 10, 2010, Defendant converted to her own use, the Property she removed from the home of Plaintiff, which was then the Property of Plaintiff and she is still in possession and control of Plaintiff's Property.

17. The Defendant has retained the exclusive use and possession of the aforesaid Property of Plaintiff since April 10, 2010, intending to and effectively temporarily and/or permanently deprive Plaintiff of the use of said Property.

18. At the time and date of the conversion of Plaintiff's Property, the Defendant was well aware that she had no right to said Property, in spite of the aforesaid with the specific intent to deprive Plaintiff of the use and ownership of said Property she removed said Property to her own exclusive use, control and dominion.

19. As a direct and proximate result of Defendant's conversion, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment for damages against Plaintiff in the amount of the damages set forth herein, plus pre and post judgment interest for which execution should issue plus the costs of this proceeding.

**COUNT II**

**Civil Theft**

20. Plaintiff realleges of paragraphs 1 though 19 as though fully set out and set forth herein.

21. For approximately the past five (5) years the Defendant used the Plaintiff's Tampa residence located at 18623 Avenue Capri, Lutz, Florida, which residence is in a gated community, as a stopping off point when she travelled to the United States from abroad.

22. That over the past five (5) years the Defendant would stop off at the Plaintiff's residence on an average of once every three (3) months and would stay for two to three days. As such, she had some clothing and other personal effects which she kept at the Plaintiff's Tampa residence but she was never given her own key to the Plaintiff's Tampa residence.

23. The Plaintiff's residence could be accessed through a keyless entry through the garage area only by someone who knew the combination to gain such access. The combination to the keypad to obtain such access to the Plaintiff's home was changed from time to time and given the infrequency that the Defendant visited the Plaintiff's

home on April 10, 2010, she did not have independent knowledge of the combination to gain keyless access to the Plaintiff's home.

24. Accordingly, upon arriving in Tampa, Florida, the Defendant would call Ms. Amy Smith, who works for Plaintiff and who resides in Tampa, Florida, to ask for the keyless combination so she could gain access the Plaintiff's home.

25. The keyless combination to the Plaintiff's home would only be provided to Defendant by Ms. Smith if the Plaintiff authorized that the keyless combination be provided to Defendant. Since the Defendant was not provided with a key to the home, she only accessed the home after obtaining the keyless combination from Ms. Smith.

26. On April 10, 2010, rather than contact Ms. Smith to obtain the keyless combination to Plaintiff's home, as was the past pattern and practice of Plaintiff and Defendant, the Defendant proceeded to the security gate for this gated community to gain access to the Plaintiff's Tampa residence. Based on a claim made by the Defendant to the guard of the gated community, the Defendant was permitted access to the gated community. Neither Plaintiff nor Ms. Smith had authorized the guard of the gated community to permit the Defendant to enter the gated community or Plaintiff's home in this gated community.

27. Defendant then proceeded to the Plaintiff's Tampa residence and gained access to the Plaintiff's home by forcing open a door to the residence.

28. Without the knowledge or consent of the Plaintiff, Defendant removed substantially all of the antiques and furniture owned by the Plaintiff (hereinafter referred to as the "Property") located at the Plaintiff's home without any authority so to do. Said Property has a value exceeding $800,000.

29. That Defendant willfully, knowingly and fraudulently gained entry and access to Plaintiff's Tampa residence with the intent to appropriate said Property located therein for her own personal use and gain.

30. As a result of Defendant's actions, Plaintiff has been wrongfully deprived of his Property by Defendant.

31. All conditions precedent to the filing of this Complaint have either been performed or waived. A copy of a pre-suit filing demand letter sent to Defendant regarding the return of the wrongfully taken Property is attached hereto as Exhibit "A".

32. Plaintiff has retained its undersigned attorneys and agreed to pay them a reasonable fee for their services rendered herein which fees are the obligation of the Defendant pursuant to law.

WHEREFORE, Plaintiff prays this Court enter its order in favor of Plaintiff finding Defendant Sharon Clayton committed civil theft, award Plaintiff damages in accordance with said findings, including treble damages as authorized by statute, award Plaintiff his reasonable attorney fees incurred herein, and for such other and additional relief as this Court deems just and proper.

LEVINE, HIRSCH, SEGALL, MACKEZNIE
& FRIEDSAM, P.A.

BY: ______________________
Arnold D. Levine, Esq.
Fla. Bar No. 046869
100 S. Ashley Drive, Suite 1770
Tampa, FL 33602
813/229-6585/FAX 229-7210
Attorneys for Plaintiff

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made by and between ANTHONY R. MOORE ("MOORE") and SHARON J. CLAYTON ("CLAYTON"). MOORE and CLAYTON are hereinafter referred to collectively as the "Parties." This Agreement shall be effective upon execution by both parties.

## RECITALS

A. MOORE initiated an action against CLAYTON in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida titled Moore v. Clayton, Case No. 10-CA-013485 Div. B and CLAYTON filed a counterclaim against MOORE and a third-party claim against Amy Smith (hereafter the "Florida Litigation"). The Florida Litigation is still pending;

B. MOORE initiated an action against CLAYTON in the High Court of Justice, Queen's Bench Division, in London, England titled Moore v. Clayton, Claim No. HO10X02438 and CLAYTON filed a counterclaim against MOORE (hereafter the "London Litigation"). The London Litigation is still pending;

C. By entering this Agreement, the Parties desire to fully and finally resolve the Tampa Litigation, London Litigation and all remaining disputes between themselves;

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1. The Atlanta Personal Property. In early 2010, the Parties shipped tangible personal property (hereafter the "Atlanta Personal Property") from California and Florida to a David Hill in the Atlanta metropolitan area.

2. The Parties agree to both use their best efforts to recover the Atlanta Personal Property from David Hill and/or Great Gatsby's. These efforts shall include, but not be limited to, contacting David Hill and/or Great Gatsby's to arrange for the return of the remaining Atlanta Personal Property as well as all documentation regarding the receipt, handling, attempted sale and sale of the assets, providing information and documentation regarding all dealings with David Hill and/or Great Gatsby's regarding the Atlanta Personal Property, testifying truthfully in any legal action initiated by either party against David Hill and/or Great Gatsby's and, if necessary for the return of the Atlanta Personal Property, executing a personal release of David Hill. To the extent CLAYTON is forced to initiate litigation to recover her share of the Atlanta Personal Property, she shall be entitled to recover all of her reasonable and necessary costs, including but not limited to attorneys' fees, before any distribution.

EXHIBIT
B

3. If and when any portion of the Atlanta Personal Property is recovered:

a. CLAYTON shall be entitled to keep the assets indicated with her initials in the attached Exhibit A to this Agreement, none of the value of which shall be counted against CLAYTON's share of the revenues resulting from the sale of any other asset;

b. The remaining assets shall be shipped, inventoried and sold in accordance with the Auction Procedures specified below. Neither Party, nor anyone else on their behalf, may otherwise move or dispose of any of the Atlanta Personal Property;

c. The net proceeds less related costs resulting from the sale of the Atlanta Personal Property shall be split evenly between CLAYTON and MOORE.

4. The Tampa Personal Property. Jointly-owned assets by CLAYTON and MOORE are currently in storage at San Ann Self Storage, 31904 State Road 52, in San Antonio, Florida and at Public Storage, 16217 N. Dale Mabry Highway in Tampa, Florida (hereafter the "Tampa Personal Property"). Within three (3) business days the effective date of this Agreement, MOORE shall turn over to CLAYTON the key(s) to the Public Storage unit(s).

5. CLAYTON shall be permitted to change the lock(s) on the Public Storage unit(s) in Tampa as long as one copy of the key(s) for the lock(s) is provided to MOORE. Neither Party may access the Tampa Personal Property in the Public Storage unit(s) absent 24-hour notice to the other Party. No one shall be permitted to remove any Tampa Personal Property from the Public Storage unit(s) other than as permitted under this Agreement. Under no circumstances shall Amy Smith be given a key or other access to the Tampa Personal Property in the Public Storage unit(s). MOORE shall be responsible for all storage costs relating to storage of the Tampa Personal Property at Tampa Bay Storage through April 2011, after which, if any such costs are incurred, they shall be incurred jointly by the Parties.

6. The Parties shall, at their joint expense, arrange for the shipping of the Tampa Personal Property at the Public Storage unit(s) in Tampa to San Ann Self Storage or, if space is not available, to some other storage facility to which they both agree. The same rules and restrictions specified above in Paragraph 5 relating to the Tampa Personal Property shall continue to apply.

7. The Tampa Personal Property shall then be inventoried and sold in accordance with the Auction Procedures specified below. The net proceeds resulting from the sale of the Tampa Personal Property shall be split evenly between CLAYTON and MOORE.

8. The Tampa Jewelry. The Florida Litigation has involved CLAYTON's claim that jewelry and other items that were stored in a safe at a residence at 18623 Avenue Capri, Lutz, Florida (hereafter the "Tampa Jewelry") are now unaccounted for. CLAYTON claims the Tampa Jewelry was removed from the safe sometime between January 1, 2010 and April 9, 2010. Each Party does hereby swear under oath under penalty of perjury that he or she: (1) did not take or otherwise orchestrate the removal of the Tampa Jewelry from the safe; (2) has no and has never had any knowledge regarding any circumstances regarding the removal of the Tampa

Jewelry from the safe between January 1, 2010 and April 9, 2010; and (3) has no and has never had any knowledge regarding the location of any of the Tampa Jewelry at any time after the date of its claimed removal from the safe between January 1, 2010 and April 9, 2010. To the extent either Party's statement under oath is proven false in a judicial proceeding initiated in a Court of competent jurisdiction, the perjuring Party shall be obligated to transfer to the other Party all of the Tampa Jewelry and/or at the non-perjuring Party's election shall be liable to the other Party for the full value of the Tampa Jewelry not transferred.

9. The Malibu Personal Property. Jointly-owned assets by CLAYTON and MOORE are currently located in Malibu, California (the "Malibu Personal Property"). CLAYTON shall be permitted at her sole discretion to take and fully own any part(s) of the Malibu Personal Property she desires. Any remaining portion of the Malibu Personal Property shall be put up for auction according to the Auction Procedures specified below. Within ninety (90) days, the items claimed by CLAYTON shall be communicated to MOORE and the remaining items to be sold shall be communicated to MOORE. The resulting net proceeds shall be divided evenly between CLAYTON and MOORE.

10. The London Personal Property. Jointly-owned assets of CLAYTON and MOORE are currently in the possession of Anglo-Pacific in London, England (hereafter the "London Personal Property"). The London Personal Property shall be inventoried and sold in accordance with the Auction Procedures specified below. Neither Party, nor anyone else on their behalf, may otherwise move or dispose of any of the London Personal Property. Both CLAYTON and MOORE shall be able to access the London Personal Property with 24-hour notice to the other Party. All outstanding costs relating to the storage of the London Personal Property owed to Anglo-Pacific shall be deducted from the net proceeds of the auction to pay Anglo-Pacific. MOORE represents that these outstanding and unpaid costs do not exceed $50,000. The resulting net proceeds shall be divided evenly between CLAYTON and MOORE.

11. The London Jewelry. The parties shall instruct their counsel in the London Litigation to take all steps necessary to release the jewelry shown in the attached Exhibit B (the "London Jewelry"). CLAYTON shall then enjoy full custody and ownership of all the London Jewelry except for the jewelry indicated with a "T" in Exhibit B, which shall belong fully to MOORE.

12. The Bourbon Hanby Jewelry. The parties shall instruct Bourbon Hanby to release all jewelry shown in the attached Exhibit C (the "Bourbon Hanby Jewelry") to CLAYTON. CLAYTON shall enjoy full custody and ownership of the Bourbon Hanby Jewelry.

13. MOORE waives any right to any other jewelry kept by CLAYTON and/or MOORE at Bourbon Hanby at any time at or after January 1, 2010.

14. The Auction Procedures. The Parties agree that Ben Movaridi, or if he is not available someone else to whom they mutually agree in writing (the "Auction Professional"), shall be retained to appraise, market and sell the property subject to these Auction Procedures. The Parties shall assist the Auction Professional in all reasonable ways to carry out these duties. The Auction Professional shall be given full access to all property subject to these Auction Procedures to appraise them, ship them, market them and sell them as it sees fit. Unless

otherwise specified, the net proceeds of an auction pursuant to these procedures shall be split evenly between CLAYTON and MOORE. All costs and fees charged by the Auction Professional shall be shared equally.

15. Mutual Release of Claims. Unless otherwise stated herein, each Party, for itself and for its successors, hereby discharges and forever releases the other Party, its successors and attorneys from any and all claims, obligations, or liabilities known or unknown, accruing at any time, existing as of the effective date of this Agreement other than the right to enforce the terms of this Agreement.

16. To the extent the Parties agree at any time that any of the property subject to this Agreement is the personal property of one of the Parties, that Party shall be able to claim its property and remove it from any possible or pending auction.

17. Dismissal of Florida and London Actions. The Parties shall forthwith within ten (10) business days after the effective date of this Agreement take all reasonable and necessary steps to dismiss with prejudice all claims made in both the Florida Litigation and the London Litigation.

18. Attorneys Fees and Costs. The Parties shall each be responsible for their own attorney's fees and costs in both the Florida Litigation and the London Litigation. The Parties waive any right to any outstanding unpaid costs currently owed to either Party in the London Litigation.

19. Confidentiality. The parties agree that the terms and conditions of this Agreement shall be kept confidential unless disclosure is compelled by a competent judicial body, waived in writing by both Parties or necessary to establish perjury pursuant to Paragraph 8 above.

20. Representations and Warranties. This Agreement is executed as a compromise of disputed claims by and against each of the Parties hereto. The consideration exchanged hereby is not to be construed as an admission of liability or responsibility by either of the Parties. This Agreement is a settlement in good faith, upon advice of each Party's separate legal counsel, Arnold D. Levine of Arnold D. Levine & Associates, P.A. for MOORE and Joseph J. Weissman of Johnson, Pope, Bokor, Ruppel & Burns, LLP for CLAYTON, based on their knowledge of the facts and circumstances, and all other dealings between the Parties as of the date hereof. This Agreement contains the entire agreement between the Parties with respect to the settlement and supersedes any previous communication, representation, or agreement whether oral or in writing. No promise or inducement other than herein set forth has been made, offered or agreed upon. Each of the Parties acknowledges that it has carefully read this Agreement in its entirety, knows and understands the contents of this Agreement, and signs the same as its own free act. This Agreement shall not be construed against any Party solely because it was drafted as a convenience by one of the Parties. Each Party signing this Agreement in a representative capacity represents and warrants that it is authorized to do so.

21. Agreement Modification. No supplement, modification, waiver, or termination of this Agreement shall be binding unless executed in writing by both Parties.

22. No Third Party Beneficiary. This Agreement is for the benefit of the Parties and confers no rights, benefits or causes of action in favor of any other third parties or entities.

23. Successors and Assignability. This Agreement shall be binding and inure to the benefit of each Party and its successors. This Agreement is not assignable absent written consent from the other Party.

24. Disputes. To the extent any dispute shall arise under this Agreement, jurisdiction and venue shall lie in the Courts of Hillsborough, County with respect to any aspect of the dispute arising with respect to any property in the United States and in the Courts of London, England with respect to any aspect of the dispute with respect to any property in the United Kingdom.

25. MOORE agrees that 50% of the monies due MOORE based on the terms of this Agreement will be paid to Arnold D. Levine Trust account. Mr. Levine will account to MOORE upon receipt of any funds received and he will make appropriate disbursements to MOORE contemporaneous when funds are received based upon the status of his account with Arnold D. Levine & Associates, P.A. at the time of disbursement. In no event shall the payment of any money due to CLAYTON pursuant to this Agreement be delayed due to this Paragraph.

26. Execution in Counterparts. This Agreement may be executed in facsimile form and/or in one or more counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same Agreement.

[INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have executed this Agreement before a notary as of the date set forth below.

ANTHONY R. MOORE

Date: 3/25/2011

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, the undersigned authority, personally appeared Anthony R. Moore, who produced the following identification: Florida Drivers License

SWORN TO AND SUBSCRIBED BEFORE ME this 25th day of March, 2011.

NOTARY PUBLIC

PATRICIA F. TODD
Commission # DD 998371
Expires September 21, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

SHARON J. CLAYTON

Date: 3/25/11

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, the undersigned authority, personally appeared Sharon J. Clayton, who produced the following identification: Florida Drivers License

SWORN TO AND SUBSCRIBED BEFORE ME this 25th day of March, 2011.

NOTARY PUBLIC

PATRICIA F. TODD
Commission # DD 998371
Expires September 21, 2014

Date: 3/25/11

ARNOLD D. LEVINE (as counsel for MOORE)
Arnold D. Levine & Associates, P.A.

Date: 3/25/11

JOSEPH J. WEISSMAN (as counsel for CLAYTON)
Johnson, Pope, Bokor, Ruppel & Burns, LLP

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FORHILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

ANTHONY MOORE,

Plaintiff/Counter-Defendant,

vs.

SHARON CLAYTON,

Defendant/Counter-Plaintiff.

and

SHARON CLAYTON,

Third-Party Plaintiff

vs.

AMY SMITH,

Third-Party Defendant.
_______________________________/

CASE NO.: 10-CA-013485
Div. B

**JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**

IT IS HEREBY STIPULATED by and between counsel for the Plaintiff, ANTHONY MOORE, and counsel for the Defendant, SHARON CLAYTON in the above matter, that same having been amicably settled and that all claim in said proceedings are to be dismissed with prejudice.

ARNOLD D. LEVINE & ASSOCIATES, P.A.

_______________________________
ARNOLD D. LEVINE, ESQUIRE
Post Office Box 3429
Tampa, Florida 33601
(813) 229-6585
Fax: (813) 229-7210
E-mail: alevine@lhsblaw.com
Florida Bar No. 0046869
Attorney for Plaintiff, Anthony Moore

3/29/11
Dated

JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP

_______________________________
JOSEPH J. WEISSMAN, ESQUIRE
403 East Madison St. Suite 400
Tampa, Florida 33602
Tel: (813) 225-2500
Fax: (813) 223-7118
E-mail: josephw@jpfirm.com
Florida Bar No.: 04/424
Attorney for Defendant, Sharon Clayton

March 29, 2011
Dated

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FORHILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

ANTHONY MOORE,

Plaintiff/Counter-Defendant,

vs.

SHARON CLAYTON,

Defendant/Counter-Plaintiff.

and
SHARON CLAYTON,

Third-Party Plaintiff

vs.

AMY SMITH,

Third-Party Defendant.
_______________________________/

CASE NO.: 10-CA-013485
Div. B

**ORDER OF DISMISSAL**

THIS CAUSE came before the Court upon the parties' Joint Stipulation for Dismissal with Prejudice. The Court having reviewed the Joint Stipulation and being otherwise duly advised in the premises,

**IT IS HEREBY ORDERED AND ADJUDGED:**

This action, including all claims and counterclaims, is dismissed with prejudice, with each party to bear their own costs, expenses, and attorneys' fee.

**DONE AND ORDERED** in Chambers at Tampa, Hillsborough County, Florida this ____ day of __________, 2011.

ORIGINAL SIGNED
CONFORMED COPY
APR 07 2011

ROBERT A. FOSTER, JR.
CIRCUIT JUDGE
_______________________________
HONORABLE ROBERT A.FOSTER
Circuit Court Judge

Copies furnished to:
Arnold D. Levine, Esquire
Joseph J. Weissman, Esquire
Amy Smith

EXHIBIT
C1

**From:** tmoore1674@gmail.com
**Date:** Wed, 4 Jan 2012 06:26:32 +0000
**To:** <sharon@esefund.com>
**ReplyTo:** tmoore1674@gmail.com
**Cc:** ece cowe<ececowe@yahoo.com>
**Subject:** Re: Update

Sharon, at the beginning of this New Year, I am going to try once again to get some answers from you. You should know well what the questions are as they have been focused and consistent......and asked of you on oh so many occasions...... Unfortunately said answers have been few and far between and less than satisfactory when you have said something or indeed anything..
I have tried to work with you for months but have unfortunately achieved nothing..And not one cent of income does indeed mean NOTHING!
I can only but assume that your almost total silence indicates either:
A) that you have nothing serious, complying with the terms of the Tampa Settlement Agreement, underway and are therefore very unlikely to achieve anything for the foreseeable future or if at all
Or:
B) you are declining to provide the information to which I am legally entitled for reasons which can only but be of great concern to me and my family.
If you have a problem, either personal or professional, of working with me on achieving the goals of the TSA, then you should clearly indicate as such...And if such is indeed the case it would appear logical and indeed fully justified for me to seek the adjudication of the Court to ensure that the law is adhered to. Your lawyers may see this differently but mine clearly do not!
You may also be advised by friends, family and others that my "threats" to take this matter back to Court are idle or what you like to call my "abusive" treatment of you. I think such thinking is misplaced...
At this start of 2012, we have an even greater incentive to get this matter brought to a head and, if necessary, a solution enforced, with the arrival of our baby daughter on Dec 4, 2011..For that reason alone, we need to see the accumulated assets sold and the cash distributed.
So once again, I have to inform you that if you refuse to provide the information requested with the specificity upon which we insist, or it appears clear that you are getting nowhere in selling or arranging for the sale of the accumulated assets, this matter will indeed have to be taken back to Court. And that not only to get the terms of the TSA enforced but also potentially to re-open the case. The latter would undoubtedly be time consuming, costly and most certainly an unpleasant experience..
Ece and her family will provide funding for any legal action that is to be taken before too long..
As usual it's up to you to abide by the law and if you decline to do so it is you, and only you, who must accept the consequences.
TM

Sent from my BlackBerry wireless device



IMPORTANT

---------- Forwarded message ----------
From: **anthony moore** <tmoore1674@gmail.com>
Date: Mon, Jun 13, 2011 at 9:45 PM
Subject: What the hell is going on!
To: SHARON@esefund.com
Cc: ececowe@yahoo.com

Please give us a full update for as far as we know NOTHING has happened since you last were in contact. I met Saroop in London and he convinced me that he was about to take control of and manage the situation but I have heard nothing since. I have no idea what you are doing with regard to Anglo Pacific and San Anna or anything else.
Quite frankly, this is a fiasco and does not reflect in any way shape or form the spirit of the Tampa settlement agreement, let alone the legal implications thereof..
This was a settlement agreement BETWEEN TWO PARTIES and called for action but we cannot see that you have done a damned thing in these past 2 months. COULD YOU PLEASE ARTICULATE a game plan that you can deliver on.
AND PLEASE DO NOT TELL US HOW BUSY YOU ARE for we are all very busy and IT IS NO EXCUSE AS SAROOP CLEARLY TOLD ME but he has done sfa about it which is really disappointing.
I am so frustrated by your inactivity that I have now filed my own complaint with the Atlanta Police. It would have been better to coordinate with you but I have no idea what you are doing' if anything.
Sharon, this cannot go on like this. We have had these ridiculous ideas of having that wimp Ben be involved and that you had a buyer somewhere out there for the lot but niente. I have done everything I can to cooperate re: Atlanta but again nothing.,..
This is now beyond a joke. I'm sure you know how to build companies but how about spending some time, legislated by the Court, on getting things sold and cash raised. We have had enough of this charade. Please discuss with your legal and other advisors and spell out a plan that you can stick to and deliver on. If you don't have the time or people like Saroop are no more than hot air then please pass the responsibility for implementing the terms of the Tampa settlement agreement to me and I will get it done but on my terms.
If you are unable to perform we are going back to Court, exercise which will be funded by AJ and her family. I am sorry but I do not know what any other right minded person would do...
We await your response.
Many thanks.
TM