## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made by and between ANTHONY R. MOORE ("MOORE") and SHARON J. CLAYTON ("CLAYTON"). MOORE and CLAYTON are hereinafter referred to collectively as the "Parties." This Agreement shall be effective upon execution by both parties.

### RECITALS

A.  MOORE initiated an action against CLAYTON in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida titled Moore v. Clayton, Case No. 10-CA-013485 Div. B and CLAYTON filed a counterclaim against MOORE and a third-party claim against Amy Smith (hereafter the "Florida Litigation"). The Florida Litigation is still pending;

B.  MOORE initiated an action against CLAYTON in the High Court of Justice, Queen's Bench Division, in London, England titled Moore v. Clayton, Claim No. HO10X02438 and CLAYTON filed a counterclaim against MOORE (hereafter the "London Litigation"). The London Litigation is still pending;

C.  By entering this Agreement, the Parties desire to fully and finally resolve the Tampa Litigation, London Litigation and all remaining disputes between themselves;

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

### AGREEMENT

1.  The Atlanta Personal Property.  In early 2010, the Parties shipped tangible personal property (hereafter the "Atlanta Personal Property") from California and Florida to a David Hill in the Atlanta metropolitan area.

2.  The Parties agree to both use their best efforts to recover the Atlanta Personal Property from David Hill and/or Great Gatsby's. These efforts shall include, but not be limited to, contacting David Hill and/or Great Gatsby's to arrange for the return of the remaining Atlanta Personal Property as well as all documentation regarding the receipt, handling, attempted sale and sale of the assets, providing information and documentation regarding all dealings with David Hill and/or Great Gatsby's regarding the Atlanta Personal Property, testifying truthfully in any legal action initiated by either party against David Hill and/or Great Gatsby's and, if necessary for the return of the Atlanta Personal Property, executing a personal release of David Hill. To the extent CLAYTON is forced to initiate litigation to recover her share of the Atlanta Personal Property, she shall be entitled to recover all of her reasonable and necessary costs, including but not limited to attorneys' fees, before any distribution.



EXHIBIT A

3. If and when any portion of the Atlanta Personal Property is recovered:

   a. CLAYTON shall be entitled to keep the assets indicated with her initials in the attached Exhibit A to this Agreement, none of the value of which shall be counted against CLAYTON's share of the revenues resulting from the sale of any other asset;

   b. The remaining assets shall be shipped, inventoried and sold in accordance with the Auction Procedures specified below. Neither Party, nor anyone else on their behalf, may otherwise move or dispose of any of the Atlanta Personal Property;

   c. The net proceeds less related costs resulting from the sale of the Atlanta Personal Property shall be split evenly between CLAYTON and MOORE.

4. The Tampa Personal Property. Jointly-owned assets by CLAYTON and MOORE are currently in storage at San Ann Self Storage, 31904 State Road 52, in San Antonio, Florida and at Public Storage, 16217 N. Dale Mabry Highway in Tampa, Florida (hereafter the "Tampa Personal Property"). Within three (3) business days the effective date of this Agreement, MOORE shall turn over to CLAYTON the key(s) to the Public Storage unit(s).

5. CLAYTON shall be permitted to change the lock(s) on the Public Storage unit(s) in Tampa as long as one copy of the key(s) for the lock(s) is provided to MOORE. Neither Party may access the Tampa Personal Property in the Public Storage unit(s) absent 24-hour notice to the other Party. No one shall be permitted to remove any Tampa Personal Property from the Public Storage unit(s) other than as permitted under this Agreement. Under no circumstances shall Amy Smith be given a key or other access to the Tampa Personal Property in the Public Storage unit(s). MOORE shall be responsible for all storage costs relating to storage of the Tampa Personal Property at Tampa Bay Storage through April 2011, after which, if any such costs are incurred, they shall be incurred jointly by the Parties.

6. The Parties shall, at their joint expense, arrange for the shipping of the Tampa Personal Property at the Public Storage unit(s) in Tampa to San Ann Self Storage or, if space is not available, to some other storage facility to which they both agree. The same rules and restrictions specified above in Paragraph 5 relating to the Tampa Personal Property shall continue to apply.

7. The Tampa Personal Property shall then be inventoried and sold in accordance with the Auction Procedures specified below. The net proceeds resulting from the sale of the Tampa Personal Property shall be split evenly between CLAYTON and MOORE.

8. The Tampa Jewelry. The Florida Litigation has involved CLAYTON's claim that jewelry and other items that were stored in a safe at a residence at 18623 Avenue Capri, Lutz, Florida (hereafter the "Tampa Jewelry") are now unaccounted for. CLAYTON claims the Tampa Jewelry was removed from the safe sometime between January 1, 2010 and April 9, 2010. Each Party does hereby swear under oath under penalty of perjury that he or she: (1) did not take or otherwise orchestrate the removal of the Tampa Jewelry from the safe; (2) has no and has never had any knowledge regarding any circumstances regarding the removal of the Tampa

Jewelry from the safe between January 1, 2010 and April 9, 2010; and (3) has no and has never had any knowledge regarding the location of any of the Tampa Jewelry at any time after the date of its claimed removal from the safe between January 1, 2010 and April 9, 2010. To the extent either Party's statement under oath is proven false in a judicial proceeding initiated in a Court of competent jurisdiction, the perjuring Party shall be obligated to transfer to the other Party all of the Tampa Jewelry and/or at the non-perjuring Party's election shall be liable to the other Party for the full value of the Tampa Jewelry not transferred.

9. <u>The Malibu Personal Property</u>. Jointly-owned assets by CLAYTON and MOORE are currently located in Malibu, California (the "Malibu Personal Property"). CLAYTON shall be permitted at her sole discretion to take and fully own any part(s) of the Malibu Personal Property she desires. Any remaining portion of the Malibu Personal Property shall be put up for auction according to the Auction Procedures specified below. Within ninety (90) days, the items claimed by CLAYTON shall be communicated to MOORE and the remaining items to be sold shall be communicated to MOORE. The resulting net proceeds shall be divided evenly between CLAYTON and MOORE.

10. <u>The London Personal Property</u>. Jointly-owned assets of CLAYTON and MOORE are currently in the possession of Anglo-Pacific in London, England (hereafter the "London Personal Property"). The London Personal Property shall be inventoried and sold in accordance with the Auction Procedures specified below. Neither Party, nor anyone else on their behalf, may otherwise move or dispose of any of the London Personal Property. Both CLAYTON and MOORE shall be able to access the London Personal Property with 24-hour notice to the other Party. All outstanding costs relating to the storage of the London Personal Property owed to Anglo-Pacific shall be deducted from the net proceeds of the auction to pay Anglo-Pacific. MOORE represents that these outstanding and unpaid costs do not exceed $50,000. The resulting net proceeds shall be divided evenly between CLAYTON and MOORE.

11. <u>The London Jewelry</u>. The parties shall instruct their counsel in the London Litigation to take all steps necessary to release the jewelry shown in the attached Exhibit B (the "London Jewelry"). CLAYTON shall then enjoy full custody and ownership of all the London Jewelry except for the jewelry indicated with a "T" in Exhibit B, which shall belong fully to MOORE.

12. <u>The Bourbon Hanby Jewelry</u>. The parties shall instruct Bourbon Hanby to release all jewelry shown in the attached Exhibit C (the "Bourbon Hanby Jewelry") to CLAYTON. CLAYTON shall enjoy full custody and ownership of the Bourbon Hanby Jewelry.

13. MOORE waives any right to any other jewelry kept by CLAYTON and/or MOORE at Bourbon Hanby at any time at or after January 1, 2010.

14. <u>The Auction Procedures</u>. The Parties agree that Ben Movaridi, or if he is not available someone else to whom they mutually agree in writing (the "Auction Professional"), shall be retained to appraise, market and sell the property subject to these Auction Procedures. The Parties shall assist the Auction Professional in all reasonable ways to carry out these duties. The Auction Professional shall be given full access to all property subject to these Auction Procedures to appraise them, ship them, market them and sell them as it sees fit. Unless

otherwise specified, the net proceeds of an auction pursuant to these procedures shall be split evenly between CLAYTON and MOORE. All costs and fees charged by the Auction Professional shall be shared equally.

15.     <u>Mutual Release of Claims</u>. Unless otherwise stated herein, each Party, for itself and for its successors, hereby discharges and forever releases the other Party, its successors and attorneys from any and all claims, obligations, or liabilities known or unknown, accruing at any time, existing as of the effective date of this Agreement other than the right to enforce the terms of this Agreement.

16.     To the extent the Parties agree at any time that any of the property subject to this Agreement is the personal property of one of the Parties, that Party shall be able to claim its property and remove it from any possible or pending auction.

17.     <u>Dismissal of Florida and London Actions</u>. The Parties shall forthwith within ten (10) business days after the effective date of this Agreement take all reasonable and necessary steps to dismiss with prejudice all claims made in both the Florida Litigation and the London Litigation.

18.     <u>Attorneys Fees and Costs</u>. The Parties shall each be responsible for their own attorney's fees and costs in both the Florida Litigation and the London Litigation. The Parties waive any right to any outstanding unpaid costs currently owed to either Party in the London Litigation.

19.     <u>Confidentiality</u>. The parties agree that the terms and conditions of this Agreement shall be kept confidential unless disclosure is compelled by a competent judicial body, waived in writing by both Parties or necessary to establish perjury pursuant to Paragraph 8 above.

20.     <u>Representations and Warranties</u>. This Agreement is executed as a compromise of disputed claims by and against each of the Parties hereto. The consideration exchanged hereby is not to be construed as an admission of liability or responsibility by either of the Parties. This Agreement is a settlement in good faith, upon advice of each Party's separate legal counsel, Arnold D. Levine of Arnold D. Levine & Associates, P.A. for MOORE and Joseph J. Weissman of Johnson, Pope, Bokor, Ruppel & Burns, LLP for CLAYTON, based on their knowledge of the facts and circumstances, and all other dealings between the Parties as of the date hereof. This Agreement contains the entire agreement between the Parties with respect to the settlement and supersedes any previous communication, representation, or agreement whether oral or in writing. No promise or inducement other than herein set forth has been made, offered or agreed upon. Each of the Parties acknowledges that it has carefully read this Agreement in its entirety, knows and understands the contents of this Agreement, and signs the same as its own free act. This Agreement shall not be construed against any Party solely because it was drafted as a convenience by one of the Parties. Each Party signing this Agreement in a representative capacity represents and warrants that it is authorized to do so.

21.     <u>Agreement Modification</u>. No supplement, modification, waiver, or termination of this Agreement shall be binding unless executed in writing by both Parties.

22.     <u>No Third Party Beneficiary</u>.  This Agreement is for the benefit of the Parties and confers no rights, benefits or causes of action in favor of any other third parties or entities.

23.     <u>Successors and Assignability</u>.  This Agreement shall be binding and inure to the benefit of each Party and its successors.  This Agreement is not assignable absent written consent from the other Party.

24.     <u>Disputes</u>.  To the extent any dispute shall arise under this Agreement, jurisdiction and venue shall lie in the Courts of Hillsborough, County with respect to any aspect of the dispute arising with respect to any property in the United States and in the Courts of London, England with respect to any aspect of the dispute with respect to any property in the United Kingdom.

25.     MOORE agrees that 50% of the monies due MOORE based on the terms of this Agreement will be paid to Arnold D. Levine Trust account.  Mr. Levine will account to MOORE upon receipt of any funds received and he will make appropriate disbursements to MOORE contemporaneous when funds are received based upon the status of his account with Arnold D. Levine & Associates, P.A. at the time of disbursement.  In no event shall the payment of any money due to CLAYTON pursuant to this Agreement be delayed due to this Paragraph.

26.     <u>Execution in Counterparts</u>.  This Agreement may be executed in facsimile form and/or in one or more counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same Agreement.

[INTENTIONALLY LEFT BLANK]

     IN WITNESS WHEREOF, the Parties have executed this Agreement before a notary as of the date set forth below.

_____  Date: _3/24/2011_
ANTHONY R. MOORE

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

     BEFORE ME, the undersigned authority, personally appeared Anthony R. Moore, who produced the following identification: _Florida Drivers License_

     SWORN TO AND SUBSCRIBED BEFORE ME this _25th_ day of March, 2011.

_____
NOTARY PUBLIC



PATRICIA F. TODD
Commission # DD 998371
Expires September 21, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

Case 8:12-cv-00612-TBM Document 7-1 Filed 03/28/12 Page 7 of 8 PageID 59

_____    Date: _3/25/11_
SHARON J. CLAYTON

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, the undersigned authority, personally appeared Sharon J. Clayton, who produced the following identification: _Florida Drivers License_

SWORN TO AND SUBSCRIBED BEFORE ME this _25_ day of March, 2011.

_____
NOTARY PUBLIC

PATRICIA F. TODD
Commission # DD 998371
Expires September 21, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

_____   Date: 3/25/11
ARNOLD D. LEVINE (as counsel for MOORE)
Arnold D. Levine & Associates, P.A.

_____   Date: 3/25/11
JOSEPH J. WEISSMAN (as counsel for CLAYTON)
Johnson, Pope, Bokor, Ruppel & Burns, LLP