THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY MOORE,

    Plaintiff/Counter-Defendant,

vs.                                           CASE NO. 8:12 CV 612-MSS-TBM

SHARON CLAYTON,

    Defendant/Counter-Plaintiff.

_____/

## **DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT**

Defendant/Counter-Plaintiff, Sharon Amezcua f/k/a Clayton ("Clayton") by and through undersigned counsel, moves for the entry of Final Judgment against the Plaintiff/Counter-Defendant, Anthony Moore ("Moore") in the form attached hereto.

**I. BACKGROUND**

As the Court is aware, trial was scheduled in this matter for Monday, September 9, 2013. Clayton was prepared to go forward with the trial as scheduled. Late in the day on Thursday, September 5, 2013, however, Moore emailed undersigned counsel for Clayton and asked to meet the next morning prior to a scheduled deposition. Moore indicated that he wanted to follow up on the Parties' prior settlement discussions. (*See* Ex.1).

At Moore's request, Moore, Clayton and undersigned counsel met the morning of Friday, September 6, 2013. During this meeting, the Parties were able to reach a comprehensive resolution of this matter through an amendment to the parties' prior settlement agreement and agreed form of final judgment. A copy of the fully executed Amendment to Settlement Agreement (the "Settlement") is attached hereto as Exhibit 2. Paragraph 5 of the Parties' Settlement states in relevant part as follows:

> Resolution of Federal Litigation. The Parties shall forthwith within ten (10) business days after the effective date of this Agreement take all reasonable and necessary steps to move the Court to enter Final Judgment as specified herein and to otherwise dismiss the case with prejudice. The Final Judgment shall be for CLAYTON in the amount of $1,000,000. CLAYTON agrees not to attempt to collect on this judgment unless and until MOORE brings a civil action against her for any purpose in the future.

Soon after executing the Settlement, the Parties filed a Joint Notice of Settlement Pursuant to Local Rule 3.08. (Doc. 101). After receiving this filing, the Court cancelled the telephonic hearing scheduled for that afternoon and closed this matter administratively subject to the right of any party to submit a form of final order or judgment. (Docs. 102 & 103).

The following Monday, undersigned counsel received an email from Moore titled "Friday's Settlement Agreement" in which Moore wrote: "I am pleased that I requested to meet you and your client last Friday morning." Moore claimed, however, that he "felt threatened and pressured into signing the settlement agreement." (Ex. 3). Knowing such accusations to be untrue, undersigned counsel for Clayton sent Moore a proposed final judgment in the form that the parties had agreed and asked Moore whether he had any proposed changes. (Ex. 4).

Later that same day, Moore wrote again in relevant part as follows: "As far as I'm concerned until it is confirmed that the settlement agreement, that I signed last Friday in Tampa, is legally binding in the jurisdiction of the UK, I shall not consider that I am bound by the terms." (Ex. 5). When told that Clayton intended to move for entry of the form of final judgment to which Moore had agreed, Moore wrote in relevant part: "I suppose I will have [sic] contest same until you confirm the legally binding validity of the settlement agreement in the UK. And [sic] important part of this agreement encompasses the London Jewelry. If the settlement agreement does not have jusrisdiction [sic] in the UK then it is worthless as far as I'm concerned." (Ex. 6).

2

Upon being informed that undersigned counsel for Clayton could not provide him with legal advice, Moore responded: "No Joe! That doesn't work for me! You had me sign an agreement in which your client has made certain commitments with regard to the London Jewelry. If those commitments are not 'worth the paper they are written on' than the agreement is not what it was intended to be." (Ex. 7). In response, undersigned counsel informed Moore that Clayton would "of course abide by the Amendment to the Settlement Agreement including the commitments made therein" and that Clayton expected him to do the same. (Ex. 8).

Apparently dissatisfied with this response, Moore wrote back to try to renegotiate the terms of the Settlement to which he had already agreed. In the same email, Moore also threatened "to make one helluva noise if you try to force this through. And it's going to cost your client more time and money, let alone angst." (Ex. 9).

The next day, Moore followed up with yet another email in which he again tried again to renegotiate the terms of the Settlement. Moore wrote in part: "It's really up to you guys but if the turquoise [necklace that belonged to Clayton pursuant to the original settlement agreement] is not released to our custody we, or I, have a real problem. AJ [his wife] is already looking into rights of appeal etc. Please do not underestimate AJ's feelings about this matter and her means/tenacity to strive to achieve her goals." (Ex. 10).

**II.     ARGUMENT**

As indicated to the Court, on Friday, September 6, 2013 the parties reached a final resolution of this matter through their Settlement. Both parties executed the Settlement under their own free will. Moore does not dispute the authenticity of this "settlement agreement, that I signed last Friday in Tampa". (Ex. 5).

Evidently, when Moore returned home to Turkey, he and/or his wife[1] decided that he should contest the validity of the Settlement and further extend this matter that has unnecessarily and expensively occupied the parties efforts for several years.  Even taking the numerous false statements in Moore's initial December 10, 2013 email (Doc. 3) as true, the email fails to provide any basis for Moore's after-the-fact allegation that he signed the Settlement under coercion.[2]  At the same time, the email shows that Moore was fully aware of the terms of the Settlement to which he had agreed.

Moore's subsequent emails prove conclusively, however, that his true rationale for wanting to avoid the Settlement has nothing to do with alleged coercion.  Moore's true concern seems to be with the effectiveness of the agreement to which he admittedly had entered.  Soon after Moore sent his initial email, he wrote: "As far as I'm concerned until it is confirmed that the settlement agreement, that I signed last Friday in Tampa, is legally binding in the jurisdiction of the UK, I shall not consider that I am bound by the terms."  (Ex. 5).  Moore wrote later with respect to the London Jewelry:  "If those [Clayton's] commitments are not 'worth the paper they are written on' than the agreement is not what it was intended to be."  (Ex. 7).  Once again, Moore admitted that he intended the Settlement to be just as it was.  Moore's only concern was whether Clayton would do as she agreed, *i.e.*, not further pursue the existing criminal inquiry in London of Moore's theft of her London Jewelry.

---

[1]  Before leaving Tampa the previous Friday, Moore asked that Clayton not immediately file or email Moore a copy of the Settlement as he did not want his wife, AJ, to know its contents, at least until he returned to Turkey.

[2]  To the extent the Court sees any reason for a hearing to weigh Moore's allegations, Clayton is prepared to offer witnesses to testify regarding, *inter alia*:  (1)  Moore's calm demeanor throughout the settlement negotiations; (2) the extent to which counsel for Clayton went out of his way to make sure that Moore was fully aware of and completely agreed with the contents of the Settlement; (3) Moore's free and voluntary execution of the Settlement before a notary; (4) how Moore was so pleased with the Settlement that he wanted to continue meeting with Clayton after its terms had been negotiated; and (5) the importance to Moore of Clayton agreeing not to continue pursuing criminal charges against Moore for his theft of her London Jewelry.

### III.  CONCLUSION

The parties' Settlement should be enforced as Moore cannot possibly uphold his burden of demonstrating that he was coerced into the Settlement.  *See Del Bosque v. AT & T Advertising, L.P.*, Case Nos. 10–51197, 11–50089, 2011 WL 4348316 at *3 (5th Cir. Sept. 16, 2011)(setting forth demanding standard for invalidating an agreement for reasons of duress or coercion); *Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. 3d DCA 2007)(same under Florida law).  A proposed Final Judgment for Clayton for the agreed $1,000,000 with the case otherwise being dismissed with prejudice is filed with this Motion. Clayton respectfully requests that the Court order the Clerk of the Court to enter the Final Judgment and that the Court otherwise dismiss this action with prejudice.

### LOCAL RULE 3.01(g) CERTIFICATE

Counsel for Defendant/Counter-Plaintiff has conferred with Plaintiff/Counter-Defendant, who has indicated opposition to the relief requested herein.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of September, 2013, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notice to Plaintiff/Counter-Defendant Anthony Moore at tmoore1674@gmail.com.

/s/ Joseph J. Weissman _____
Joseph J. Weissman
JOHNSON, POPE, BOKOR,
   RUPPEL & BURNS, LLP
FBN 0041424
403 E. Madison Street, 4th Floor
Tampa, FL  33602
813/225-2500
813/223-7118 (fax)
josephw@jpfirm.com
*Attorneys for Defendant/Counter-Plaintiff Clayton*

#1555815